544

[No. 39105. Department One. November 16, 1967.]
OROVILLE CORDELL FRUIT GROWERS, INC., *Respondent, v.*
MINNEAPOLIS FIRE & MARINE INSURANCE COMPANY
*et al., Appellants.**

*Clarke, Clarke, Albertson & Bovingdon,* for appellants.

*Guttormsen, Scholfield, Willits & Ager* and *Harold O. Willits,* for respondent.

HALE, J.—The question—and it is indeed a close one—in this second appeal is whether the trial court could properly find that an explosion in the refrigeration system caused the loss. Ammonia gas escaping from aluminum tubing in the Oroville Cordell Fruit Growers, Incorporated, apple warehouse, December 28, 1961, damaged nearly 17,-000 boxes of apples. Although the loss was fully covered by insurance, a problem arose among the insurance carriers concerning the contribution each would be required to make to the loss payable under the policies.

If the damage could be fairly attributed to an explosion within the ammonia system, appellants Minneapolis Fire & Marine Insurance Company ($5,489.97) and New Hampshire Fire Insurance Company ($21,959.87), are liable for a substantial contribution; if the escapement of gas cannot fairly be said to have been caused by an explosion, then Minneapolis Fire & Marine and New Hampshire Fire are not required to contribute.

This court made a detailed and comprehensive statement of the facts and set forth the main legal doctrines govern-

*Reported in 434 P.2d 3.

ing them in the first appeal of this cause. *Oroville Cordell Fruit Growers, Inc. v. Minneapolis Fire & Marine Ins. Co.* 68 Wn.2d 117, 411 P.2d 873 (1966). We make that opinion a part of this one, for the two should be considered in pari materia.

On the first appeal, we remanded the cause to the trial court to determine if the break or opening in the aluminum tubing had been caused by an explosion as that term is ordinarily understood. We were of the opinion that the policies of insurance employed the word *explosion* in its ordinary and popular meaning instead of a scientific or technological term, as possibly the trial court may have considered it. The opinion said, too, that if, in deciding whether an explosion had occurred, the trial court believed "that the case should be reopened for further evidence under the circumstances," it was authorized to do so. See 68 Wn.2d at 126.

Pursuant to this remand, the learned trial judge reopened the case for whatever evidence the parties wished to present concerning whether the ammonia gas escaped because of an explosion or gradually through some less abrupt means than could fairly be said to constitute an explosion. Two highly trained professional experts, one holding a bachelor of science degree in chemical engineering and a master of science degree, and the other an associate professor of mechanical engineering at the University of Washington, gave evidence.

Both witnesses, in addition to academic training and education, were eminently qualified by practical experience to express professional opinions as to the factors which produced the opening in the aluminum tubing and whether these factors amounted to what the trial court could, in a popular and ordinary meaning of the term, describe as an explosion. Since the break in the aluminum line obviously did not involve a sudden and rapid oxidation, or a quick chemical reaction, or concern a nuclear reaction, we put aside the definitions concerning explosions arising from

these phenomena and use the definition most closely related to the facts of the case. The definition of *explosion* most appropriate to the circumstances, we think, is set forth in Merriam-Webster's Third International Dictionary (1964), and conveys the ordinary meaning of the word as it is popularly understood:

> explosion . . . a violent expansion or bursting that is accompanied by noise and is caused by a sudden release of energy . . . from an escape of gases or vapors under pressure.

We think that the trial court applied this definition when, following the hearing of evidence on the reopening of the case, it made the following findings and conclusions:

> That the court has considered the likelihood of the opening in the aluminum tubing having been a continuation of a corroding process and finds that the type and size of hole which did result in the tubing could only be the result of an explosion; that the aluminum tubing was highly corrosive on the exterior, but that a thin inner surface uniformly resisted corrosion; That the pressure was greater within the tubing than without and the shell burst from pressure within the pipe, longitudinally, resulting in an elongated hole. That the tubing was in a horizontal position in the evaporating unit, not vertically; that the length of the opening was not the result of sodium hydroxide running lengthwise down the pipe; That aluminum pipe is weaker structurally in a lengthwise direction, and that the pipe burst lengthwise, resulting in the enlongated opening. That a pinhole leak, from corrosion eating through, would have resulted in a roughly round aperture, as opposed to elongated. Finding of fact No. 1.

> The court finds that the evidence supports that there was noise and violence accompanying the explosion, although the degree is not determined, as the sudden release of pressure and the substantial volume of ammonia released in such a short period of time circumstantially indicates both noise and violence; That the degree of sound and violence of an explosion varies with the physical properties of the container, probably less in soft aluminum tubing than with brittle cast iron pipe, for example, but nevertheless present. Finding of fact No. 2.

The court therefore concludes that there was an explosion which was sudden, violent, and accompanied by noise, bursting the aluminum tubing, within the meaning ordinarily ascribed to the term, based upon common experience and notions of men. Conclusion of law No. 1.

Although the evidence in crucial phases of the case was in substantial conflict, nevertheless, it abundantly supported the court's finding of an explosion within the ordinary and popularly accepted meaning of that term, and it is not for a reviewing court to set aside findings of fact which are supported by substantial evidence. *Malacky v. Scheppler*, 69 Wn.2d 422, 419 P.2d 147 (1966); *Roundup Tavern, Inc. v. Pardini*, 68 Wn.2d 513, 413 P.2d 820 (1966); *Western Steel Bldgs., Inc. v. Universal Carloading & Distrib. Co.*, 68 Wn.2d 522, 413 P.2d 954 (1966); and *Ormiston v. Boast*, 68 Wn.2d 548, 413 P.2d 969 (1966).

The judgment should be and is, therefore, affirmed.

FINLEY, C. J., HILL and ROSELLINI, JJ., and LANGENBACH, J. Pro Tem., concur.